Harry E. Schirick, J.
Article 7 (§§ 300-313) of the Railroad Law, enacted in 1954 (L. 1954, ch. 824), provides for the organization of railroad redevelopment corporations. Its application is limited to domestic railroads, debtors in bankruptcy proceedings, carrying at least 500,000,000 passenger miles (Railroad Law, §§ 300, 301). Among the privileges which the law bestows upon such corporations is a nine-year exemption from all except real estate taxes, protection against increase *1075 of the latter, and power to increase passenger fares, which should not be subject to suspension by the Public Service Commission prior to a determination of unreasonableness (§ 307).
The Long Island Rail Road Company qualified under such law. In reliance upon its provisions it undertook an ambitious program of rehabilitation and improvement of its plant and facilities. The Pennsylvania Railroad Company, of which Long Island is a wholly owned subsidiary, made available large sums of money to finance such program.
Chapter 386 of the Laws of 1958 amended section 307 so as to require prior application to and approval by the Public Service Commission before a fare increase can be effected.
Plaintiffs have brought this action for a judgment declaring (he 1958 statute unconstitutional upon the ground that it impairs the obligation of a contract made by them with the State of New York and upon the further ground that the statute deprives plaintiffs of their property without due process of law.
The State has moved for judgment declaring the statute to be in all respects valid and constitutional.
Plaintiffs cite the legislative history of the 1954 enactment, the findings of the Long Island Transit Authority, its search for a solution of the problem besetting the Long Island Rail Road and its protracted negotiations with Long Island and Pennsylvania. They urge that the legislation which finally emerged and their acts, commitments and investment on the strength thereof create a contract between them and the State.
It has been held that the statute in question is a general incorporation act and not a private or local bill which would violate section 17 of article III and section 1 of article XVI of the New York Constitution (Gerosa v. Long Is. R. R. Co., 207 Misc. 360; Klein v. Long Is. R. R. Co., 9 Misc 2d 486).
A general incorporation act is not a contract. The State makes no pledge therein that its charters will remain inviolate. Since the decision in the famous Dartmouth College case (4 Wheat. [17 U. S.] 518) power has been expressly reserved by State Constitution to alter and repeal corporate charters. The Constitution of the State of New York contains such provision (art. X, § 1) and this was in effect when article 7 of the Railroad Law was enacted in 1954.
In order that an enactment be deemed to create a contract its language must be plain and susceptible of no other reasonable interpretation (Stanislaus County v. San Joaquin King’s Riv. Canal & Irrigation Co., 192 U. S. 201). The general terms of the present enactment do not suggest a contract.
*1076 It is the conclusion of this court that the charter granted to Long Island was and remains subject to the reserved power of the State to amend or repeal and that the 1958 enactment is a valid exercise of such reserved power. (Spring Val. Water Works v. Schottler, 110 U. S. 347; People ex rel. City of New York v. Nixon, 229 N. Y. 356.)
The 1958 enactment provides for the regulation of the rates of a public utility and lies within the police power of the State.
Judgment in favor of defendant.